DargaN, Ch.
delivered the opinion of the Court.
From the view which the Court has taken of this case, it is unnecessary to discuss some of the questions which have been elaborately argued at the bar. The construction given to the will of Thomas Barksdale, is believed to be correct. The limi-^ tation over to the testator’s surviving children, in the event of Mrs. Gamage dying without issue, is void for remoteness. The words, '■'■and their issue,” superadded to the devise in favor of the surviving children, indicates an intention, on the part of the testator, not to confer a personal benefit on the survivors as such : but that if they should be dead on the failure of the issue of Mrs. Gamage, the issue of his surviving children should *277 represent them and take the estate in that event. This is an attempt to create an estate in remainder,'to take effect after an indefinite failure of issue, and after the natural efflux of the precedent estate of inheritance devised to Mrs. Gamage. The,, limitation to the surviving children of the testator is void for ' remoteness, and the devise to Mrs. Gamage (Sarah Barksdale) stands unaffected by it. The devise, then, is to her, and the heirs of her body: the technical import of which words is to create a fee conditional. No more appropriate and significant words could have been employed for that purpose. For a fee conditional is defined to be “ a fee restrained to some particular heirs, exclusive of others: donatio stricta et coarctata; sicut certis h&redibus, quibusdam a successions exclusis: as to the heirs of a man's body, by which only his lineal descendants were admitted: or to the heirs male of his body, in exclusion both of collaterals and lineal females also.” 2 Bl. Com. 110.
There is no objection, whatever, in point of policy, to the estate in fee conditional. I think it subserves a useful purpose. At all events, it is in no disfavor. It is only within a recent period, however, that it has been recognized by judicial authority to exist in South Carolina. No earlier case exists in which such estates were so recognized than Jones ads. Postell & Potter, (Harp. 92, A. D. 1824). Beyond this period, we may appeal in vain to our Reports and judicial records for any decision or discussion illustrative of the rules and principles which govern these estates. In the mother country, they were abolished, or so| modified, by the statute de donis conditionalibus, as to deprive^ them of all those distinctive attributes which they possessed at ’ common law. This celebrated statute, so important in its bearing upon the institutions of landed property in England, and, I may say, upon the form of Government and the political destiny of that great country, was passed 576 years ago. The great body of the common law, in all its ponderous and majestic proportions, has been built up by judicial decisions and the commentaries of eminent jurists since that period. Subsequent to that timej there has been but little discussion in English *278 courts, and in the works of English writers upon law, on the subject of estates in fee conditional: because, with the exception of estates by copyhold tenure, (to which the statute de donis did not apply,) no such estates exist in their system of jurisprudence. For this reason, we have only the scanty materials afforded by the early common law writers, to throw light upon this subject, whenever a question like the present arises in our courts. The information, however, which we derive from this source, slight as it is, is sufficient to enable the Court understandingly to decide the question now before it.
Mrs. Gamage, (then Sarah Barksdale) by the will of her father, Thomas Barksdale, being seized of an estate in fee conditional, and being about to contract matrimony with Charles Dewar Simons, on the 25th day of September, A. D. 1807, conveyed the said estate in fee to trustees, to the uses of her marriage settlement, which she entered into with the said Charles Dewar Simons. The marriage was shortly afterwards duly solemnized; and there was issue of this marriage, namely, Mary Moncrief Simons, who was born about the 20th July, 1808, and lived only a day or so after birth. On 21st January, 1812, Charles Dewar Simons died, without leaving issue, and leaving his wife, Sarah, (afterwards Mrs. Gamage) surviving him. On cthis event (it was provided by the térms of the deed of marriage settlement,) the trustees were to stand seized of the estate, for the use of Mrs. Simons in fee. The statute of uses having executed the use in her, she was again vested with the legal title in the estate.
On the eve of her second marriage (with the defendant, Edward Gamage) she, by a deed of marrige contract, again conveyed the estate to trustees to be held for the joint' use of the said Edward Gamage and Sarah Simons, his intended wife, during their joint lives: remainder to the survivor: remainder to the children of the marriage in .fee: and, in default of such child or children, to the survivor of the principal parties to the contract in fee. On the 30th June, 1841, Mrs. Gamage died, without having had issue by her second marriage, and *279 leaving the said Edward Gamage surviving her. And the said Edward Gamage, who is one of the defendants, claims the whole of the estate in fee, by virtue of his survivorship, according to the terms of the deed of marriage settlement.
The conveyances of Mrs. Gamage, in the way of marriage settlement, were, each of them, to all intents and purposes, an alienation, in a manner and form which would not only cut off the descent per formam doni to her own issue, but would defeat the reverter to the testator and his heirs: provided that, under the circumstances of the case, she had the right to convey the fee. In the circuit decree, I held this language: “ An alienation, either before or after the hirth of issue, is sufficient to bar the rights of those who are to take per formam doni, and to make the title of the purchaser valid. But if the alienation is before the birth of issue, and then the issue die before the tenant in fee conditional who has alienated: or if the alienation be after the birth and death of issue, this does not prevent the reverter to the donor.” The first proposition in the preceding sentence is true, and is well sustained by the authorities: namely, that where the alienation is before the birth of issue, and issue is subsequently born and dies during the life of the ; tenant in fee conditional, the reverter of the donor is not thereby prevented. But the proposition which asserts, that the same fie-t suit follows, in a case where there is issue born which dies, and! there is an alienation after the hirth and death of such issue, is ■ not so sustained, and was founded upon a misconception of the \ state of the authorities upon this subject. The distinction is ' nice, and, apparently, arbitrary: but yet is found to be in harmony with the general rules of law in regard to estates upon condition. On reference to these rules, and upon a careful ! examination of the authorities, the conclusion is, that where there is an alienation before the birth of issue, the subsequent birth and death of issue, does not defeat the right of the donor in the reversion. Hence the first deed of marriage settlement was inoperative for this purpose. But where the alienation is subsequent to the birth and death of issue, as in the case of the *280 last deed of marriage settlement, the question presents itself in a different aspect.
Under the purely military system of tenures, that existed under the earlier Kings of the Norman dynasty, all feuds were granted for the life of the feudatory only (2 Bl. Com. 55). In process of time they were extended beyond his life: and at length to the heirs of his body: and, in some instances, to his heirs general. The fee conditional is a remnant of these earlier tenures. “ It was called a fee conditional, by reason of the condition expressed or implied in the donation of it, that if the do-nee died without such particular heirs,” [of his body) “ the land should revert to the donor.” But if he had such heirs “ it should remain to the donee,” (2 Bl. Com. 110). “ Now we must observe” says Sir William Blackstone, (2 Com. 110) “that when any condition is performed, it is thenceforth eiitirely gone; and the thing to which it was before annexed, becomes thenceforth absolutely and wholly unconditional. So that, as soon as the grantee had issue born, his estate was supposed to become absolute, by the performance of the condition; at least, for these three purposes : — 1. To enable the tenant to alien the land, and thereby to bar not only his own issue, but also the donor of his interest in the reversion: 2. To subject him to forfeit it for treason ; which he could not do, till issue born, longer than his own life: 3. To empower him to charge the land with rents, «fee. The fee conditional, it would thus appear, (to the extent laid down in the passage cited) is not different from other estates on condition; in regard to which, a fundamental rule is, that when the condition is once performed, it is thenceforward gone forever.
Mrs. Gamage having had issue by her first marriage with Charles Dewar Simons, had thus performed the condition annexed to her estate, before her alienation of it by her deed of marriage contract with Edward Gamage. By this deed, the land was conveyed to trustees, to be held for the use of Edward Gamage in fee, upon the condition of his being the survivor, and there being no issue of the marriage. This contingency has happened. The statute has executed the use in him, and he is *281 the sole proprietor of the land, the partition of which is sought in the bill.
It is ordered and decreed that the circuit decree be reversed, and that the bill be dismissed.
Johnston, Dunkin and Wardlaw, CC. concurred.

Decree reversed.